# Exhibit 3

**Declaration of Geralda Larkins (April 18, 2025)**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO.: 2:25-49-DCR

UNITED STATES DEPARTMENT OF THE TREASURY                    PLAINTIFF

VS.              **DECLARATION OF GERALDA LARKINS**

NATIONAL TREASURY EMPLOYEES                                  DEFENDANT
CHAPTER 73

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

I, Geralda Larkins, declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am Director of Labor/Employee Relations and Negotiations at the Internal Revenue Service ("IRS"), a bureau within the U.S. Department of the Treasury ("Treasury"). In this role, I provide executive oversight of functions encompassing employee misconduct, labor relations strategy and negotiations, and field labor relations. I have served as Director since August of 2022, and have previously served in a variety of human resources and labor relations positions since I began my career at IRS in 2001.

2. I am familiar with the complaint filed in the above-captioned matter regarding Executive Order 14,251, *Exclusions from Federal Labor-Management Relations Programs* (the "Executive Order"). Based on personal knowledge and information provided to me in the course of my official duties, I provide this declaration in support of Plaintiff's motion for summary judgment.

3. I have reviewed the Executive Order and the March 27, 2025 guidance issued by the Office of Personnel Management entitled "Guidance on Executive Order *Exclusions from*

1

*Federal Labor Management Relations Program*.". I have also reviewed a Frequently Asked Questions ("FAQs") document that the Chief Human Capital Officers Council ("CHCOC") shared with federal agency chief human capital officers (CHCOs) on April 8, 2025.

4. The National Treasury Employees Union ("NTEU") is a federal labor union representing employees of the IRS and other federal agencies. NTEU represents a bargaining unit including almost all professional and non-professional IRS employees, with certain exceptions. NTEU has local chapters across the country, including Defendant NTEU Chapter 73 ("Chapter 73"). The local chapters negotiate local-level agreements, enforce within their geographical areas any applicable national or local agreements, and serve as the primary point of contact for members within their specific bargaining units. Chapter 73 represents over two thousand IRS employees at three locations in the Northern Kentucky metropolitan area: the CSC Annex Building in Florence, the CSC Gateway Center in Covington, and CSC Gateway West in Covington. It has principal responsibility for enforcing the IRS's collective bargaining agreements (CBAs)—including both the National Agreement and local memorandum of understanding (MOUs)—against the IRS in this region.

5. The IRS has a national agreement with NTEU covering all IRS employees in the NTEU bargaining unit. IRS's 2022 National Agreement was executed on August 26, 2021, and implemented on October 1, 2021, and a 2025 Addendum was executed on February 23, 2024, and implemented on October 1, 2024. This declaration refers to the 2022 National Agreement as amended by the 2025 Addendum as the "National Agreement." There is no expiration date for the National Agreement.[1] IRS also has specific agreements (MOUs) with Chapter 73.

---

[1] The National Agreement provides that in the absence of agreement between the parties on a successor agreement, the terms of the 2022 National Agreement as amended by the 2025 Addendum will continue to apply.

2

6. Consistent with the guidance in the CHCOC FAQs document, neither Treasury nor the IRS have terminated the IRS's CBAs with NTEU and NTEU Chapter 73 pursuant to Executive Order 14,251.

7. It is important that the IRS have the discretion to swiftly implement changes to its policies to fit its changing needs. The current requirements in the IRS's CBAs include many restrictive terms that prevent the agency from taking necessary actions that it otherwise would take, such as:

   a. Article 12 of the National Agreement requires advance notice of changes to performance standards and an opportunity for Defendant to discuss these changes with the IRS. Such requirement is inconsistent with the IRS's ability to efficiently ensure that it is evaluating employees in a manner that recognizes the present needs of the agency.

   b. Article 13 of the National Agreement requires IRS to "provide first consideration to IRS employees for bargaining unit vacancies" before considering external candidates. This impedes the ability of the IRS to ensure the most skilled and capable workforce possible.

   c. Article 13 of the National Agreement also outlines a practice of promoting employees through an automatic ranking system and creates an overly burdensome process by which the IRS must rank, consider, evaluate, and rate employees in a contractually agreed-upon process, rather than basing those decisions on individualized determinations of what candidates will best suit the IRS's current promotional needs. If the IRS fails to abide by the requirements of Article 13, the IRS may be required to redo the entire promotion process, thus prohibiting the IRS

3

    from expeditiously processing personnel actions to respond to mission needs and the Administration's priorities.

d. Article 15 of the National Agreement imposes detailed timelines and procedures that must be followed if the IRS decides to reassign employees to a new post of duty, including an obligation to negotiate with the union and potentially submit the dispute to an appeal before the Federal Service Impasse Panel. *See also* 5 U.S.C. §§ 7106(b), 7119. Article 47 further specifies that if a reassignment or realignment imposes incidental, minor changes to the physical space an employee works in, it is subject to notice and pre-decisional involvement, and in some cases, burdensome mid-term bargaining procedures. *See also* 5 U.S.C. §§ 7102(2); 7116(a). This prevents the IRS from maintaining a dynamic workforce that is able to respond to changing needs.

e. Article 40 of the National Agreement restricts IRS's ability to quickly and efficiently separate underperforming employees. The National Agreement requires that performance improvement plans (PIPs) allow employees a sixty-day period to bring their performance up to an acceptable level. The Administration, however, has determined that a 30-day period is sufficient, and the IRS wishes to implement policies to that effect, but the IRS is restricted from doing so by the terms of the National Agreement.

f. MOUs between the IRS and Chapter 73 regarding moving office spaces due to the expiration of a lease—including MOUs signed in April 2023 and June/July 2024 regarding the closure of the Florence "Files" building—require IRS to ensure certain features of the new office spaces, provide moving supplies to employees,

issue advance notice of any proposed moves, and participate in additional grievances related to this agreement. These agreements divert resources from IRS's mission and restrict IRS's ability to quickly and efficiently manage its workplaces.

8. In addition to restricting IRS from taking actions it would otherwise want to take, the CBAs divert IRS time and resources from other agency priorities. For example, Article 8 of the National Agreement requires the IRS to respond to requests for information from union members about topics that are subject to collective bargaining and negotiation. *See also* 5 U.S.C. § 7114. Chapter 73 currently has four open information requests. This obligation requires time and resources from agency staff that could otherwise be devoted to its primary mission and operations.

9. Article 9 of the National Agreement also requires the IRS to allow the local chapter presidents and as many stewards "as the chapter deems appropriate" to act on the union's behalf, including by allowing them to use "official time" for union activities. Chapter 73 currently has approximately thirty union stewards. These stewards used over fifteen thousand hours of "official time" in Fiscal Year 2024 during which they received pay from Treasury/IRS for time spent on union specific activities. This is time that could have otherwise been devoted to the IRS's mission but for the requirements in the IRS's CBAs.

10. The IRS's CBAs also require the IRS to participate in grievance proceedings with local chapters and their members. *See also* 5 U.S.C. §§ 7121–7123. Grievance proceedings are a formal process for resolving workplace disputes involving violations of the IRS's CBAs. There are nearly thirty open grievances specific to Chapter 73 or its members—three of which have advanced to the arbitration stage. For example, the IRS is currently involved in grievance proceedings with Chapter 73 over the IRS's denial of an employee's request for remote work. Another grievance proceeding was initiated by Chapter 73 over the IRS's decision not to offer a

job to a particular union member because the IRS determined that he lacked the necessary specialized experience. In addition, IRS is involved in multiple local arbitrations and requests for information. These activities require a considerable amount of time and resources from IRS and otherwise distract from the IRS's mission and priorities.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on April 18, 2025.

*Geralda Larkins*
Digitally signed by Geralda Larkins
Date: 2025.04.18 18:40:49 -04'00'
_____
GERALDA LARKINS